1
2
3
4
5          UNITED STATES DISTRICT COURT
6          EASTERN DISTRICT OF CALIFORNIA
7
                                        )    1:04-cv-6057 OWW DLB
8   GIL MCDOUGALD,                      )
                                        )    MEMORANDUM DECISION AND
9              Plaintiff,               )    ORDER DENYING DEFENDANTS'
                                        )    MOTION TO TRANSFER DISTRICT
10      v.                              )    (28 U.S.C. § 1404(a)).
                                        )
11  O.A.R.S., INC., a corporation,      )
    OARS CANYONLANDS, INC., a           )
12  corporation, GEORGE WENDT, an       )
    individual, M/V METAL CRAFT JET     )
13  BOAT bearing VIN                    )
    1FWE02522XAO23408, her engines,     )
14  tackle, apparel, furniture and      )
    appurtenances, and DOES 1           )
15  through 10, inclusive,              )
                                        )
16                                      )
               Defendants.              )
17                                      )
    _____ )
18
19
20
21          I.   INTRODUCTION
22
23      Defendants O.A.R.S., Inc., OARS Canyonlands, Inc., and

24  George Wendt ("Defendants") move to transfer venue to the

25  District of Utah pursuant to 28 U.S.C. § 1404(a).  Plaintiff

26  Gil McDougald ("Plaintiff") opposes the motion.

27  //

28  //

                          1

## II.   **PROCEDURAL HISTORY**

Plaintiff filed his original complaint against O.A.R.S., Inc., OARS Canyonlands, Inc., North American River Expeditions, Inc., and M/V Metal Craft Jet Boat bearing VIN 1FWE02522XAO23408, on August 5, 2004.  (Doc. 1, Compl.). Plaintiff moved to amend on December 12, 2004, and was granted leave to amend by the magistrate judge on January 24, 2005. (Doc. 10, Motion to Amend; Doc. 14, Order).  The operative First Amended Complaint ("FAC") was also filed on January 24, 2005. (Doc. 18, FAC).  Plaintiff dismissed North American River Expeditions, Inc., as a defendant and added George Wendt as a defendant.  (*See id*.).  Plaintiffs' claims include: (1) Jones Act Negligence, 46 App. U.S.C. § 688; (2) Unseaworthiness; and (3) Maintenance and Cure.

The current named defendants are: O.A.R.S., Inc.; OARS Canyonlands, Inc. ("Canyonlands"); M/V Metal Craft Jet Boat bearing VIN 1FWE02522XAO23408; and George Wendt (collectively, "Defendants").  Plaintiff acknowledges that Defendant O.A.R.S., Inc., is not properly named because it is not the parent company of Canyonlands, and that instead, O.A.R.S. Companies, Inc., is the parent company of Canyonlands.[1]

---

[1] Plaintiff learned this information from Defendant George Wendt at his deposition.  (Pl.'s Opp. 7, citing Micklow Decl. Ex. 2 at 15; Ex. 1 at 20-1).  O.A.R.S. Companies, Inc., is incorporated in Utah.  Its corporate office is located at Angel's Camp, California.  Defendant George Wendt and his wife are the sole shareholders of O.A.R.S. Companies, Inc.  O.A.R.S. Companies, Inc., is headquartered in Angel's Camp on a permanent, year-round basis.  (*Id*.).

1  (Doc. 22, Pl.'s Opp. 7).  Plaintiff intends to move to dismiss

2  O.A.R.S., Inc., from the case and add OARS Companies, Inc.,

3  pursuant to Fed. R. Civ. P. 15, although has not yet done so.

4  Defendants O.A.R.S., Inc., Canyonlands, and George Wendt answered

5  the FAC on March 3, 2005. (Doc. 19, Canyonlands Answer; Doc. 20,

6  O.A.R.S, Inc., Answer; Doc. 21, Wendt Answer).

7      Defendants move to transfer venue to the District of Utah.

8  (Doc. 16, Def.'s Mem., filed March 1, 2005).  Plaintiff opposed.

9  (Doc. 22, Pl.'s Opp., filed Mar. 15, 2005).  Defendants replied.

10  (Doc. 27, Def.'s Reply, filed Mar. 22, 2005).

11      Oral argument was heard on April 11, 2005.  Jack C. Nick

12  appeared on behalf of defendants.  Kurt Micklow appeared on

13  behalf of Plaintiff.

14

15              III.   **STATEMENT OF FACTS**

16

17      Plaintiff sued Defendants for negligence under

18  46 App. U.S.C. § 688 ("Jones Act").  (Doc. 18, FAC ¶ 1).  The

19  Jones Act allows seamen to recover for injuries sustained as a

20  result of their employers' negligence.[2]  *Id.*; *see also Ribitzki*

21  *v. Canmar Reading & Bates, Ltd. P'ship*, 111 F.3d 658, 662

22  (9th Cir. 1997).  Plaintiff alleges venue in this district is

23  proper pursuant to 46 App. U.S.C. § 688(a).

24  _____

25      [2] Defendants note that disputed between the parties
    (although not at issue in this motion) are Plaintiff's status as

26  a "seaman" under the Jones Act or under common law doctrine of
    "Maintenance and Cure;" whether Plaintiff was "in navigation" for

27  purposes of the Jones Act; whether the relevant part of the
    Colorado River in Utah is a "navigable" waterway pursuant to the

28  Jones Act  (Doc. 16, Def.'s Mem. 4).

Plaintiff is a resident of Moab, Utah. (*See* Doc. 23, McDougald Decl. ¶ 1). Plaintiff was employed by Defendant Canyonlands on a seasonal basis as a "Jet Boat pilot" from 2000 to 2003. (*Id*. at ¶ 2). Plaintiff's duties included towing a 24-foot Jet Boat from Moab to a boat launch on the Colorado River, launching the Jet Boat, piloting the Jet Boat and leading customers on tours, returning the Jet Boat to the launch, loading the Jet Boat back onto the trailer, and towing the Jet Boat back to Moab. (*Id*.). The incident from which this litigation arose occurred on September 10, 2003, when Plaintiff alleges he injured his back while loading the Jet Boat back onto the trailer after a boat tour. (*Id*. at ¶ 3; Doc. 18, FAC ¶ 10). No one witnessed the incident.

A.   **Medical Witnesses Regarding Plaintiff's Injury.**

Plaintiff sought and received treatment for his injury from several doctors, and also underwent back surgery. Plaintiff underwent all of his medical treatment in Utah. All of his doctors are residents of Utah. All of his medical records are located in Utah. The physicians who treated him after his purported injury on September 10, 2003, include:[3]

    – **Dr. Jonas Munger, M.D.**, a Utah resident, who examined
        Plaintiff and prescribed Flexeril and Vicodin. (Doc. 16,
        Def.'s Mem. 6).

---

[3] Defendants assert that Plaintiff has not produced a complete set of medical records. Defendants based their summary of Plaintiff's medical treatment on the purportedly incomplete records that have been produced to date.

1   – **Dr. Paul Asmar, M.D.,** a Utah resident.  Dr. Asmar
2   performed an MRI exam on Plaintiff on September 23, 2003.
3   (*Id.*).
4   – **Dr. Jackson Maddux, M.D.,** a Utah resident.  Dr. Maddux
5   prescribed medication and recommended Plaintiff use an
6   electrical stimulation unit.
7   – **Dr. Gary L. Halversen, M.D.,** a Utah resident, who
8   performed an MRI exam on Plaintiff and who prepared a report
9   comparing the September 2003 results and the November 2003
10  results.  (*Id.* at 6-7).
11  – **Dr. Robert Peterson, M.D.,** a Utah resident, who examined
12  Plaintiff in November 2003 and prepared a report.  (*Id.* at
13  7).
14  – **Dr. Stephen J. Warner, M.D.,** a Utah resident, who examined
15  Plaintiff in March 2004 and prepared a report.  (*Id.* at 8).
16  – **Dr. Les Harris, M.D.,** a Utah resident, who examined
17  Plaintiff at least ten times.  Dr. Harris recommended
18  surgery for Plaintiff, and referred Plaintiff to Dr. Kade
19  Huntsman, M.D.  (*Id.* at 8-9).
20  – **Dr. Kade Huntsman, M.D.,** a Utah resident, who performed
21  back surgery on Plaintiff on October 26, 2004.  (*Id.* at 9).
22      Plaintiff asserts that he had "four treating physicians,"
23  but names only Dr. Harris and Dr. Huntsman.  (Doc. 22, Pl.'s Opp.
24  18).  Plaintiff does not identify the other two "treating
25  physicians," although Plaintiff does not dispute that all of this
26  physicians are Utah residents.
27      The parties dispute, among other things, whether Plaintiff
28  had a preexisting back injury.  (Doc. 16, Def.'s Mem. 4).  During

**5**

oral argument, Plaintiff, through his attorney, conceded that, during his previous employment, Plaintiff had a "slip-and-fall" accident involving his back.  Plaintiff contends, however, that this accident was not causally related to the injury that purportedly resulted from the September 10, 2003, accident at Canyonlands.  In their reply, Defendants identified five additional physicians whom they assert treated Plaintiff (in Utah) after the previous "slip and fall" accident:

> – **Dr. S. Rouzer,** whom Plaintiff visited a number of times between October 1998 and March 2003 complaining of back pain.  Dr. Rouzer prescribed the pain medication Percocet and Valium and referred Plaintiff to Dr. Kopel for acupuncture.

> – **Dr. Kopel,** a chiropractor, who treated Plaintiff at least twice.

> – **Dr. Chris Dutton**, a chiropractor.  Defendants assert that Plaintiff informed Dr. Rouzer that he had "been going to a chiropractor Chris Dutton but ha[d] not had any success."

> – **Dr. Stanford,** whose role Defendants do not clarify.

> – **Dr. Murray,** who was mentioned by Dr. Rouzer as having treated Plaintiff for back pain in the past.

(Doc. 27, Def.'s Reply 7).

At oral argument, Plaintiff did not dispute having been treated by the above-listed physicians after his earlier "slip-and-fall" accident.  The parties do not dispute that Plaintiff underwent all of his medical treatment for the slip-and-fall accident in Utah and that all of his medical records are located in Utah.

**6**

**B.**   **Liability Witnesses.**

The following individuals have been identified by the
parties as potential witnesses regarding the September 10, 2003,
incident:

- **Erik Thompson** is a former Canyonlands employee.  Although
Mr. Thompson did not witness the September 10, 2005,
incident, he was with Plaintiff on the boat tour that day
and was witness to the conditions on the day the incident
occurred.  Erik Thompson is a resident of Oregon.

- **Brian Stepek** was Plaintiff's immediate supervisor at the
time of the incident and is expected to testify regarding
Plaintiff's report of the incident and to the condition of
the trailer.  (Doc. 22, Pl.'s Opp. 11; Doc. 16, Def.'s Mem.
10).  Mr. Stepek is a Wyoming resident who has worked part-
time in Utah.  (Doc. 22, Pl.'s Opp. 11; Doc. 16, Def.'s Mem.
11).

- **Dennis Smoldt** was Plaintiff's supervisor before Mr.
Stepek, and was identified by Plaintiff as a person with
knowledge of the incident.  (*See* Doc. 22, Pl.'s Opp. 18).
Mr. Smoldt is a resident of Utah.  (*Id*. at 18.).

- **Dave Bodner** was Plaintiff's supervisor before Mr. Smoldt,
and trained Plaintiff how to load and unload the Jet Boat
and use the equipment.  (Doc. 16, Def.'s Mem. 10).  Mr.
Bodner is a Utah resident.

- **Nathan Bricker** is the current regional manager of OARS
Companies, Inc.  He was not employed by O.A.R.S. Companies,
Inc., until after the September 10, 2003, incident, but he
was assigned to investigate the incident in 2004 and made

7

two trips to Utah. (*Id.* at 18).  Mr. Bricker is a resident
of California. (*See* Doc. 16, Def.'s Mem. 16).  The parties
have stipulated to the authenticity of photographs taken Mr.
Bricker in the course of his investigation and that Mr.
Bricker will not testify at trial.  (Doc. 27, Def.'s Reply
4).

- **Richard Weiss** was the regional manager for O.A.R.S.
Companies, Inc., at the time of the September 10, 2003,
incident. (Doc. 27, Def.'s Reply 4).  Mr. Weiss is a
resident of California.  Plaintiff does not specify what
knowledge he has of the September 10, 2003, incident,
although Plaintiff claims Mr. Weiss has information
regarding the maintenance and cure issues, equipment
replacement and repair, and drafting of safety manuals.
(Doc. 22, Pl.'s Opp. 13).  Defendants assert that Mr. Weiss
"was only peripherally involved in OARS Canyonlands
operations at the time of Plaintiff's accident" and is
therefore not a crucial witness. (Doc. 27, Def.'s Reply 4).

- **Rocko Digilio** was identified by Plaintiffs as a potential
witness. (Doc. 22, Pl.'s Opp. 13 n. 34).  According to
Defendant's counsel, Mr. Digilio was a California resident
and worked at the Angel's Camp location and was an
accountant and bookkeeper for OARS Companies, Inc.
Plaintiff claims that Mr. Digilio can testify to the non-
payment of Plaintiff's maintenance and cure, authorizations
for equipment replacement and repair, and the drafting of
safety manuals. (*Id.* at 12-3).  Defendants asserted during
oral argument that Mr. Digilio is no longer employed by

**8**

O.A.R.S. Companies, Inc.  Defendants stated that they
believe, although they were not able to confirm, that
Mr. Digilio has re-joined the armed forces and is now
serving in the Middle East.

Defendants also assert that the following current and former
Canyonlands Jet Boat operators can testify to the proper
procedures for loading the Jet Boat onto the trailer, Plaintiff's
training regarding the procedure, and water levels around the
time of the incident: Christian Dean, Scott Morrison, and
Jason Taylor. (*Id.* at 5).  Mr. Dean, Mr. Morrison, and Mr.
Taylor are Utah residents.  During oral argument, Plaintiff
asserted that none of these employees were Jet Boat operators and
in fact, Mr. Dean operated rafts (not Jet Boats); Mr. Morrison
was a part-time mechanic; and Mr. Taylor was a manager.
Defendants maintained during argument that part of the
responsibilities of each was to operate Jet Boats.  The parties
dispute the relevance and importance of these four witnesses.

Canyonlands also asserts that the following current and
former employees were working in the Moab office on the date of
the incident and may be able to testify to Plaintiff's actions
after the accident:  Dan Phillips, Stephen Kenner, Lars Haarr,
and Marlene Moody. (*Id.*).  Mr. Phillips, Mr. Kenner, and
Mr. Haarr, and Ms. Moody are Utah residents.  During oral
argument, Plaintiff asserted that he did not speak with any of
these individuals after the accident, and that the only person he
spoke with was Mr. Thompson.  Defendants assert all of these
individuals are Utah residents.  The parties dispute the
relevance and importance of these four witnesses.

**9**

**C.   Alter-Ego Witnesses.**

Plaintiff asserts that alter-ego liability is an issue that will dominate this litigation.  The following individuals have been identified by the parties as potential witnesses regarding alter-ego liability:

- **Joyce Helmbrecht** is the O.A.R.S. Companies, Inc. "controller."  (*See* Doc. 24, Micklow Decl., Ex. 2 Helmbrecht Dep. 11).  Plaintiff asserts Ms. Helmbrecht has knowledge of the corporate and financial affairs of the companies.  (Doc. 22, Pl.'s Opp. 12).  Plaintiff also asserts Ms. Helmbrecht can testify to the maintenance and cure issues.  (*Id.* at 12-3).  Ms. Helmbrecht is a resident of California.[4]

- **Kelly Caverli** is the bookings supervisor for OARS Companies, Inc.  Ms. Caverli is a resident of California.  Plaintiffs assert she can speak to the corporate and financial affairs of the companies.  Defendants respond that Ms. Caverli was responsible for customer bookings and did not interact with Plaintiff on a regular basis.  (*Id.*; Doc. 27, Def.'s Reply 4).  Defendants asserted during oral argument that instead, Ms. Caverli called a person named Maureen at the Moab, Utah, office with customer booking information.

**D.   Workers' Compensation Witnesses.**

Plaintiff brought a workers' compensation claim in Utah

---

[4] Ms. Helmbrecht is not a party-controlled witness because she is employed by O.A.R.S. Companies, Inc., which is not, as of yet, a named defendant in this case.

through the Workers Compensation Fund ("WCF"), which Defendants assert is Canyonlands' workers compensation insurer.  The WCF adjusters assigned to handle Plaintiff's claim were Shannon Harte and Jennifer Oswald, who are both Utah residents.  (Doc. 16, Def.'s Mem. 5).  Defendants contend that the adjusters can testify to information they reported by telephone conversations and by way of official records, to Canyonlands regarding Plaintiff's claim and treatment.

### E.   United States Geological Survey ("USGS") Witnesses.

Defendants contend in their reply that United States Geological Survey ("USGS") officials can testify to water level for the area where Plaintiff was loading and unloading the Jet Boat on September 10, 2003.  These officials reside, and their respective records are located, in Utah.

### F.   Witnesses Regarding Loss of Past and Future Income.

Plaintiff's loss of past and future earnings is also at issue in this case.  Two of Plaintiff's employers in the last ten years are headquartered outside of Utah (Kejana Development Corporation, San Mateo, California; and IT Corporation, North Tawanda, New York).  Two of Plaintiff's employers are headquartered in Utah (Jordan Valley Drywall, West Jordan, Utah; and Canyonlands, Moab, Utah).  (Doc. 16, Def.'s Mem. 9).  It appears from the parties' submissions that Plaintiff's place of employment for these companies was Utah.  Plaintiff maintains that it is not necessary to call any witnesses from these employers and that instead, earnings information can be obtained

**11**

1  by way of business records.   (Doc. 22, Pl.'s Opp. 12).

2

3        **G.    Relationship and Residence of the OARS Defendants.**

4        Defendant Canyonlands is a corporation incorporated under

5  the laws of the state of Utah.   Canyonlands operates a

6  recreational boating business and Canyonlands maintains a

7  seasonal office in Moab, Utah, to run that business.   Canyonlands

8  asserts it "contracts" with its parent company (i.e., O.A.R.S.

9  Companies, Inc.) to provide administrative services.   Based on

10 the deposition testimony of Joyce Helmbrecht, Plaintiffs assert

11 that these services include payroll, banking, accounting,

12 advertising, bookings, record-keeping, budgeting, insurance,

13 taxes, and preparation of safety manuals.   (Doc. 22, Pl.'s Opp.

14 6; Doc. 24, Micklow Decl. Ex. 1, Helmbrecht Dep. 17-30, 37-40).

15       Defendant OARS is a corporation that is incorporated under

16 the laws of the state of Utah.   (Doc. 20, O.A.R.S., Inc., Answer,

17 ¶ 3).   OARS's principal place of business is in Angel's Camp,

18 California.   (*Id.*).   O.A.R.S., Inc.'s relationship to Defendant

19 Canyonlands its parent O.A.R.S. Companies, Inc., or Defendant

20 Wendt is not clear.

21       Defendant George Wendt and his wife are the sole

22 shareholders of O.A.R.S. Companies, Inc.   O.A.R.S. Companies,

23 Inc., manages and operates all of Defendant Wendt's companies

24 from its Angel's Camp location.   (Doc. 22, Pl.'s Opp. 7).

25       O.A.R.S. Companies, Inc., is not a named defendant.

26 O.A.R.S. Companies, Inc., is incorporated under the laws of the

27 state of Utah, and has its principal place of business at

28 Angel's Camp, California.

**12**

1

2

## IV.   <u>LEGAL ANALYSIS</u>

Defendants move to transfer venue pursuant to 28 U.S.C.
§ 1404(a).   Section 1404(a) provides that "[f]or the convenience
of parties and witnesses, in the interest of justice, a district
court may transfer any civil action to any other district or
division where it might have been brought."  *Id*.   Defendants
contend that the Eastern District of California is an
inconvenient venue because, although Defendants' principal place
of business is at Angel's Camp, California, in the Eastern
District, venue is more convenient in Utah for the witnesses.
(*See* Doc. 27, Def.'s Reply 2).   Motions to transfer for improper
venue are properly brought under 28 U.S.C. § 1406(a).   Defendants
have not raised § 1406(a).

Motions to transfer venue pursuant to 28 U.S.C. § 1404(a)
presuppose two forums in which venue is proper.  *See Chicago R.
I. & P. R. Co. v. Egoe*, 212 F.2d 378, 379 n. 1 (7th Cir. 1954).
The first issue is whether venue is proper in both the Eastern
District of California and the District of Utah.   The second
issue is whether the factors to be considered by the district
court on a motion to change venue pursuant to § 1404(a) weigh in
favor of Defendants.

### A.   <u>Whether Venue Is Proper in Both the Eastern District of California and in the District of Utah.</u>

Venue is proper in Jones Act cases "in the district in which
the defendant employer resides or in which his principal office
is located."  *Id*.   This provision incorporates the general

**13**

definition of residence contained in 28 U.S.C. § 1391(c), which allows suit against a corporation in any judicial district in which it is incorporated or licensed to do business or in which it is doing business. *Pure Oil Co. v. Suarez*, 384 U.S. 202, 204 (1966); *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1409 (9th Cir. 1989) ("In *Pure Oil*, the Court ruled that venue for a seaman's Jones Act...claim was proper under a general venue statute, 28 U.S.C. § 1391(c) [(1964)], under which the defendant corporation could be sued in any district in which it transacted business, even though the Jones Act had its own venue provision, under which venue would have been proper only where the defendant resided or had its *principal* place of business." (emphasis in original)).  The current version of 28 U.S.C. § 1391(c) (1996) provides: "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."[5]

Defendant Canyonlands was Plaintiff's employer. (Doc. 19, Canyonlands Answer ¶ 8).  Canyonlands is a Utah corporation. (*Id.* at ¶ 3; *see also* Doc. 16, Def.'s Mem. 15).  It has a seasonal office in Utah and a permanent corporate office in Angel's Camp, California.  While Defendants' papers are not clear, Canyonlands seems to dispute that its principal place of business is in Angel's Camp.  (Doc. 27, Def.'s Reply 2 ("CANYONLANDS is not attempting to transfer the case to a foreign

---

[5] Section 688(a) states: "Jurisdiction in [Jones Act] actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."  It has long been settled that the term "jurisdiction" refers only to venue. *Pure Oil*, 384 U.S. at 203.

district, it is seeking to transfer *to its home state*.")
(emphasis in original)).  However, regardless of the location of
Canyonlands' "principal place of business," venue is proper in
the Eastern District of California because Canyonlands' principal
place of business is its corporate office in Angel's Camp,
California, which is located in that district.  Specifically,
Canyonlands conducts various administrative services, which may
include "payroll, banking, accounting, advertising, bookings,
record-keeping, budgeting, insurance, taxes, and preparation of
safety manuals."[6]  (Doc. 22, Pl.'s Mem. 6; *see also* Doc. 27,
Def.'s Reply 2, 4).  Likewise, venue is also proper in the
District of Utah because Canyonlands does business in Utah
through its Moab, Utah seasonal office and its operation the
recreational boating business there.  (*Id.*).  Venue is proper in
a district where "any defendant resides."  28 U.S.C. § 1391(a).
Defendant Canyonlands "resides" in both California and Utah (for
venue purposes).  Venue is proper in both California and Utah.

Plaintiff acknowledges that Defendant O.A.R.S., Inc., is not
properly named because it is not the parent company of
Canyonlands, and that instead, O.A.R.S. Companies, Inc., is the
parent company of Canyonlands.  (Doc. 22, Pl.'s Opp. 7).
Regardless, O.A.R.S., Inc. is still a named defendant.
O.A.R.S., Inc., is incorporated in Utah and its principal place
of business is in Angel's Camp, California.  As to defendant

---

[6] Defendant Canyonlands does not specify what
"administrative services" are performed at the Angel's Camp
office.  Plaintiff asserts that the activities listed are
performed there, and Defendant does not dispute that it maintains
its corporate office at Angel's Camp, California.

15

1   O.A.R.S., Inc., venue is therefore proper in both California and

2   Utah.[7]

3       Defendant Wendt is a resident of the state of California

4   within the Eastern District of California.  (Doc. 21, Wendt

5   Answer, filed Mar. 30, 2005, ¶ 4).  Venue is therefore proper in

6   the Eastern District of California and improper in the District

7   of Utah as to Defendant Wendt.  However, because venue is proper

8   in the district where "any defendant resides," improper venue as

9   to one defendant does not preclude a finding of proper venue for

10  a case with multiple defendants, like this case.  28 U.S.C.

11  § 1391(a).

12      For all the reasons stated above, venue is proper in both

13  the Eastern District of California and the District of Utah.

14

15  **B.   Whether Venue Should Be Transferred Pursuant to 28**
        **U.S.C. § 1404(a).**

16

17      **1.   Legal Standard.**

18      Motions to transfer venue under 28 U.S.C. § 1404(a) may be

19  brought in Jones Act cases.  *See e.g., Mitchell v. Farrell Lines,*

20  *Inc. v. Univ. Terminal and Stevedoring Corp.*, 350 F. Supp. 1325,

21  1326 (E.D. Penn. 1972).  The purpose of 28 U.S.C. § 1404(a) is to

22  prevent the waste of time, energy and money and to protect

23  litigants, witnesses, and the public against unnecessary

24  inconvenience and expense.  *Van Dusen v. Barrack*, 376 U.S. 612,

25

26      [7] O.A.R.S., Companies Inc., is incorporated in Utah, with

27  its principal place of business at Angel's Camp, California.
    Because O.A.R.S. Companies, Inc. is not a named defendant, a

28  determination of proper venue for this entity is not necessary.

1    616 (1964).

2        Transfer will not be allowed merely to shift the

3    inconvenience from one party to another.  *Id.* at 635-7; *Dual Lock*

4    *Partition Sys., Inc. v. Ridgeview Glass, Inc.*, 877 F. Supp. 1432,

5    1438 (D. Or. 1995).  The party seeking transfer bears the burden

6    of showing that the balance of convenience clearly favors

7    transfer.  *Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279

8    (9th Cir. 1979).  The decision whether to transfer is within the

9    sound discretion of the trial court.  *Id*.

10       District courts employ a wide range of factors in deciding

11   motions to transfer.  *See* 15 Fed. Prac. & Proc. Juris. 2d

12   ("Wright & Miller") § 3847 n. 7.2 (listing district court cases

13   and variety of factors considered by each).  Defendant cites a

14   District of Columbia case, *Securities and Exchange Comm'n v. Page*

15   *Airways, Inc.*, 464 F. Supp. 461 (D.D.C. 1978), that considered

16   six factors, and Defendant structures its brief around those

17   factors.  Specifically, the *Page Airways* court considered:

18       [1] convenience of witnesses of plaintiff and defendant; [2]
         ease of access to sources of proof; [3] availability of
19       compulsory process to compel the attendance of unwilling
         witnesses; [4] the amount of expense for willing witnesses;
20       [5] the relative congestion of the calendars of the
         potential transferee and transferor courts; [6] and other
21       practical aspects of expeditiously and conveniently
         conducting a trial.
22

23   464 F. Supp. at 463.  The *Page Airways* court noted that the

24   factors to consider in deciding a § 1404(a) motion "are generally

25   a matter left to the discretion of the trial court."  *Id.*

26       Federal district courts in California have likewise

27   considered a variety of factors.  For example, the court in

28   *E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 466

                                17

1   (E.D. Cal. 1994), considered "convenience of the parties,

2   convenience of the witnesses, and interest of justice."  In its

3   analysis, the *Gallo Winery* court broke down these broad factors

4   into more specific inquiries, including "convenience of

5   witnesses, judicial economy, relative ease of access to proof,

6   and compulsory process."  *Id*; *see also Broadcast Mktg. Int'l,*

7   *Ltd. v. Prosource Sales & Mktg., Inc.*, 345 F. Supp. 2d 1053, 1064

8   (N.D. Cal. 2004) (considering "1) the location of the events

9   giving rise to the suit; 2) the convenience of the parties; 3)

10  the convenience of the witnesses; 4) the relative ease of access

11  of proof; 5) the availability of process for unwilling witnesses;

12  6) plaintiff's choice of forum; 7) a forum's familiarity with the

13  governing law; 8) trial efficiency; and 9) the interest of

14  justice.").

15       The Ninth Circuit considers these factors:

16       (1) the location where the relevant agreements were
         negotiated and executed, (2) the state that is most familiar
17       with the governing law, the plaintiff's choice of forum, (4)
         the respective parties' contacts with the forum, (5) the
18       contacts relating to the plaintiff's cause of action in the
         chosen forum, (6) the differences in the costs of litigation
19       in the two forums, (7) the availability of compulsory
         process to compel attendance of unwilling non-party
20       witnesses, and (8) the ease of access to sources of proof.

21  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.

22  2000); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805

23  F.2d 834, 843 (9th Cir. 1986).

24       The key purpose and inquiry of discretionary transfer of

25  venue under § 1404(a) is the relative convenience of the forum to

26  the parties and the witnesses.  The party seeking to transfer has

27  the burden to show that the balance of convenience clearly favors

28  transfer.  *Savage*, 611 F.2d at 279.

**18**

At issue between the parties here is whether Utah or California is a more convenient forum.  Plaintiff brings three claims against defendants: Negligence under the Jones Act; Unseaworthiness; and Maintenance and Cure.  Plaintiff also alleges that Defendant Wendt is the alter ego of the OARS companies and that the corporate veil should be pierced. Plaintiff alleges the OARS Defendants failed to purchase adequate insurance.  Plaintiff also alleges the OARS Defendants were negligent in failing to provide a safe work environment and that the Jet Boat was "unseaworthy."  Plaintiff alleges he was disabled as a result of his injury and prevented from performing similar work, and that he is therefore entitled to recover compensatory damages for his medical treatment "until he has reached a state w[h]ere there can be no possible improvement in his physical condition."  (Doc. 18, FAC ¶ 22).

The key factors in this case, as they relate to the relevant facts and key issues, are:  the location of the parties; location of key witnesses; availability of compulsory process for unwilling witnesses; ease of access to sources of proof; familiarity with governing law; and plaintiff's choice of forum.

### 1.    Location of Parties.

Defendant Canyonlands is a Utah corporation that operates a seasonal boating business in Moab, Utah.  Canyonlands' administrative tasks, including payroll, banking, accounting, advertising, bookings, record-keeping, budgeting, insurance, taxes, and preparation of safety manuals, are conducted in Angel's Camp, California.  Because Canyonlands essentially

conducts about half of its operations in Utah and half of its operations in California, the relative convenience for Defendant Canyonlands does not weigh in favor of either forum.[8]

Defendant Wendt is a resident of California.  Wendt is the owner of O.A.R.S. Companies, Inc., which is the parent company of Defendant Canyonlands.  Defendants provided no evidence or indication that Defendant Wendt travels to Utah for duties and activities associated with Canyonlands' operations there. California is ostensibly a more convenient forum for Defendant Wendt.

**2.   Location of Key Witnesses.**

**(a)   Liability witnesses.**

The witnesses who can best testify to the negligence and unseaworthiness causes of action include Canyonlands employees who have personal knowledge of the working conditions and procedures at Canyonlands' Moab, Utah, facility; the condition of the Jet Boat that is the subject of this dispute; and Plaintiff's training regarding boating, loading, and unloading procedures. The key witnesses as to the above-listed issues include: Erik Thompson (an Oregon resident), Brian Stepek (a Wyoming resident), Dennis Smoldt (a Utah resident), and Dave Bodner (a Utah resident).

Erik Thompson is a former Canyonlands employee who was with Plaintiff on the boat tour on the day of the incident, although

---

[8] Defendant O.A.R.S., Inc., has been improperly named, and its location is not relevant to this inquiry.

he did not witness Plaintiff's accident.  Utah and California are likely equally as inconvenient for Mr. Thompson, since he is a resident of Oregon and would have to travel to either state.

Mr. Stepek was Plaintiff's supervisor at the time of the incident and is expected to testify to the condition of the equipment and to Plaintiff's report of the incident.  Because Mr. Stepek lives and works for part of the year in Utah, Utah would likely be a slightly more convenient forum than California for Mr. Stepek.

Mr. Smoldt is Plaintiff's former supervisor and was identified by the parties as a person with knowledge of the incident.  Mr. Smodt is a resident of Utah and Utah is a more convenient forum for him.

Mr. Bodner is Plaintiff's former supervisor and trained Plaintiff in loading and unloading procedures.  Mr. Bodner is a Utah resident and Utah is a more convenient forum for him.

Other witnesses identified by Defendant who may be able to testify as to loading and unloading procedures and as to the conditions on the day of Plaintiff's accident include the following six current and former Canyonlands employees (all Utah residents): Christian Dean, Scott Morrison, Jason Taylor, Dan Phillips, Stephen Kenner, Lars Haarr, and Marlene Moody.  At oral argument, the parties disputed the substance of the testimony of these witnesses.  However, Defendants do not explain the substance of the information these individuals can add to the testimony of Mr. Thompson, Mr. Stepek, Mr. Smoldt, and Mr. Bodner.  That these individuals are residents of Utah does not necessarily weigh in Defendants' favor without a showing that

they can provide material non-cumulative information.

Other witnesses identified by the parties do not appear to be key witnesses for issues relating to the Negligence and Unseaworthiness causes of action, and their residency is not afforded as much weight as the key witnesses.  Nathan Bricker (a California resident) is not expected to testify at trial.  The parties dispute the importance of the testimony of Richard Weiss (a California resident), who was the regional manager at the time of the incident.  Defendants assert that he was only "peripherally" involved in Canyonlands at the time of the incident.  Plaintiffs provided no evidence or argument to the contrary.  Mr. Weiss is likely not a key witness.

Because Mr. Thompson is an Oregon resident, Mr. Stepek is a Utah resident, Mr. Smoldt is a Utah resident, and Mr. Bodner is a Wyoming resident who works part-time in Utah, the location of the key liability witnesses slightly favors transfer to Utah.

**(b)   Damages witnesses.**

The witnesses who can testify to the damages element (i.e., Plaintiff's alleged physical and emotional injuries) include his treating physicians.  Plaintiff underwent all of his medical evaluation and treatment in Utah.  All of Plaintiff's medical records are located in Utah.  Utah is a more convenient forum for Plaintiff's treating physicians, if they were to offer live testimony.

Plaintiff cites two cases to support his contention that transfer may be denied in Jones Act cases even if medical evidence is located outside of the district.  *De Moraes v. Amer.*

**22**

1  *Export Isbrandtsen Lines, Inc.*, 289 F. Supp. 861 (E.D. Penn.
2  1968); *Williams v. Centr. Gulf Steamship Corp.*, 240 F. Supp. 562
3  (E.D. Penn. 1965).  The *De Moraes* court denied the motion to
4  transfer from Philadelphia to New York, holding that the fact
5  that the medical records were located in New York City did not
6  establish such inconvenience in defending case in Philadelphia.
7  289 F. Supp. at 862.  The *Gulf Steamship* court denied the motion
8  to transfer from Pennsylvania to Louisiana, where the plaintiff
9  underwent medical treatment in Louisiana for about a year, was
10  thereafter treated in New Jersey and New York.  240 F. Supp. at
11  563.  The court reasoned that Defendants had not met their burden
12  to show it would be too inconvenient and expensive to defend the
13  case in Pennsylvania, where the treating physicians were U.S.
14  government doctors whose testimony was most often given by way of
15  deposition and who had rarely appeared for in-court testimony.
16  The court also considered other factors in denying the transfer
17  motion, including that the out-of-state witnesses were seamen and
18  rarely available for testimony.

19       Defendants correctly note that neither of these cases held
20  that the location of the treating physicians was unimportant;
21  instead, the cases held that the balance of factors, including
22  the location of the physicians and medical records, did not weigh
23  in favor of transfer.  Plaintiff argues that the residency of the
24  treating physicians should not be afforded much weight because
25  the parties will likely hire their own medical experts to
26  evaluate and interpret the Plaintiff's medical history and to
27  testify at trial.  Counsel for Plaintiff noted that treating
28  physicians rarely testify at trial in Jones Act cases and that

**23**

much more often, their testimony is taken by way of deposition. (Doc. 24, Micklow Decl. ¶ 10).

Facts that weigh in favor of the district of Utah as a more convenient forum include that Plaintiff was treated in Utah by at least eight physicians (as well as other physicians Defendants list in their reply), that Plaintiff's medical records are located in Utah, and that the location of any future medical evaluations will likely occur in Utah (including those by independent medical experts hired by the parties).  However, even if that Plaintiff's treating physicians are unlikely to offer live testimony, and Plaintiff's medical records are obtainable through discovery requests or by subpoena, Plaintiff is a Utah resident, future medical treatment and evaluation will be in Utah.  This factor favors Utah.

### (c)  Alter-ego witnesses.

The witnesses who can testify to the corporate structure of the OARS companies include OARS companies' employees with personal knowledge of those issues.  The key witness (other than Defendant Wendt) regarding these issues appears to be Joyce Helmbrecht, the OARS Companies, Inc., "controller." Ms. Helmbrecht is a resident of California and California is a more convenient forum for her.

Another potential witness regarding alter-ego issues is Rocko Diglio, a Utah resident and the Defendants' former accountant and bookkeeper.  Mr. Digilio is no longer employed by the Defendants.  According to information the parties have to date, Mr. Digilio re-joined the armed forces and is currently

serving in the Middle East.  Mr. Digilio does not seem to be a key witness.  It is not clear what information he could provide regarding the OARS Companies' purchase of insurance for its employees, or if he could provide such information, whether he could provide non-cumulative testimony that would differ from or supplement that of Ms. Helmbrecht's.  Mr. Digilio's residency is not afforded much weight.  Plaintiff also asserts that Kelly Caverli, a California resident, can testify to corporate and financial affairs; however, Defendants respond that Ms. Caverli is in charge of booking customers on boating trips, and Plaintiffs offered no evidence or argument to the contrary.  Ms. Caverli is not a key witness and her residence is afforded little weight.

Because Ms. Helmbrecht, a California resident, appears to be the only witness (other than Defendant Wendt) for alter ego issues, the location of alter ego witnesses weighs in favor of California.

**(d)   Witnesses regarding Defendants' insurance and workers' compensation coverage.**

The witnesses who can testify to the insurance and compensation structure for work-related injuries include the Canyonlands employees who can testify to those issues, as well as the claims adjusters at WCF.  The key witness (other than Defendant Wendt) regarding the structure of the OARS Companies appears to be Ms. Helmbrecht, a California resident.

The WCF claims adjusters are Utah residents, and Utah would be a more convenient forum for them.  Under most circumstances,

the WCF claims adjusters would be unlikely to testify at trial because the only admissible, non-hearsay evidence they would likely offer are (1) records relating to Plaintiffs' workers' compensation claim kept in the ordinary course of business; and (2) records of communications with Defendants to show Defendants' state of mind in rejecting Plaintiffs' claim for maintenance and cure.  However, during oral argument, Defendant argued that the WCF claims adjusters would offer live testimony regarding telephone conversations they had with Defendants to show Defendants' state of mind regarding maintenance and cure issues. There is no evidence to support Defendant's assertion at oral argument that there were communications between the WCF adjusters and Defendants regarding Plaintiff's workers' compensation benefits or proceedings.  However, if such testimony was offered, Utah would be a more convenient forum for the adjusters.  The location of the WCF adjusters could weigh in favor of Utah.

**(e)   Witnesses regarding Plaintiffs' past and future income.**

The witnesses who can testify to the past and future earnings of Plaintiff include Plaintiff's former employers.  One of Plaintiff's former employers is headquartered in Utah.  Two are headquartered in other states (New York and California).  It is unlikely, however, that live testimony from the former employers would be offered to show Plaintiffs' earning potential. This information is accessible from record and will be presented by an economist or vocational rehab counselor.  This factor does not weigh in favor of either forum.

**(f)   United States Geological Survey Witnesses.**

Defendants argue that officials from the United States Geological Survey ("USGS") in Utah would testify regarding the water levels of the Colorado river on the day of the accident. The level of the river is relevant to Plaintiff's claim that because the river level was low, he had to hoist the boat up onto the trailer with his shoulder and back, which he alleges contributed to his back injury.   However, USGS officials are unlikely to offer live testimony, since water level statistics are available from official records that are admissible without in-court testimony.   *See* Fed. R. Evid. 803(8) (public records exception).   This factor does not weigh in favor of either forum.

**3.   Availability of Compulsory Process on Unwilling Witnesses.**

Fed. R. Civ. P. 45(b)(1)(2) provides that no district court may subpoena a witness to testify at trial or produce documents who resides more than 100 miles from the place of trial or as permitted under the law of the state in which the district court is located.   California law permits statewide service.   Cal. Civ. Proc. § 1989.   Nevertheless, Utah residents are not subject to compulsory service in the Eastern District of California. Likewise, California residents are not subject to compulsory service from a Utah court.

Defendants have identified the following witnesses who would not be subject to subpoena in California: Plaintiff's treating physicians in Utah; Plaintiff's supervisors and co-workers who are Utah residents; WCF claims adjusters; Plaintiff's former

27

employers; and United States Geological Survey ("USGS") officials with knowledge of the water levels on the day of the accident. (Doc. 27, Def.'s Reply 5-6).

While Plaintiff's treating physicians reside in Utah, it is unlikely they would testify at trial.  If necessary, the physicians could be subpoenaed for deposition testimony in Utah. Fed. R. Civ. P. 45(a)(2); see also Fed. R. Civ. P. 32(3)(B). Also, it is likely that these issues can be addressed by the parties' respective experts, who can be hired anywhere. Compulsory process is not an issue as to the treating physicians.

Also, Eric Thompson, one of the four witnesses regarding the Jet Boat, loading and unloading procedures, Plaintiff's training, and conditions on the day of the accident, is not subject to compulsory process in either California or Utah because he is an Oregon resident.  Mr. Bodner and Mr. Smoldt, as Utah residents are not subject to subpoena in California.  Mr. Stepek, the other witness regarding these issues, works part time in Utah and therefore may be subject to compulsory process in Utah if present in the state at the relevant time.

As discussed above, the lack of compulsory process for USGS officials, WCF adjustors, and Plaintiffs' previous employers does not weigh in Defendants' favor, as these witnesses are not likely to testify at trial in any event.

The availability of compulsory process weighs in favor of transfer to Utah.

### 4.   Ease of Access to Sources of Proof.

The Jet Boat, named as a defendant, and trailer are located

28

in Utah and, according to Plaintiff, "will never be admitted into evidence regardless of the venue of the trial."  Plaintiff argues that the parties' respective experts would inspect the boat in Utah and that the resulting photographs and reports could be made available in either Utah or California.  This is a close question.  This factor does not clearly weigh in favor of one forum or the other.

### 5.   Plaintiff's Choice of Forum.

Plaintiff argues that the plaintiff's choice of forum is afforded great deference in venue transfer cases.  Defendant argues that Plaintiff's choice of forum is afforded little if any deference in Jones Act cases where the plaintiff is not a resident of the chosen forum state and where the incident giving rise to the cause of action occurred outside the chosen forum.

The plaintiff's choice of forum is generally afforded considerable deference in venue transfer cases. *Decker Coal*, 805 F.2d at 843.  However, the plaintiff's choice of forum is afforded less weight when the chosen forum is not his state of residence. *Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir. 1998); *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001)*;* *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Carolina Cas. Co. v. Data Broadcasting Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001).  However, the plaintiff's choice of forum is afforded more weight when the balance of factors does not strongly weigh in favor of transfer. *Gallo*, 899 F. Supp. at 466; *see also In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003) ("When plaintiff and

29

defendant are in different states there is no choice of forum
that will avoid imposing inconvenience; and when the
inconvenience of the alternative venues is comparable there is no
basis for a change of venue; the tie is awarded to the
plaintiff....").

Defendants cite *Loftin v. Maritime Overseas Corp.*, 1994 WL
793717, 1995 A.M.C. 982 (D. Alaska, Sept. 30, 1994), to support
their position that Plaintiff's choice of forum should not be
afforded as much weight in deciding motions to transfer venue
under § 1404(a) in Jones Act cases. *Loftin*, however, is
distinguishable.  The issue in *Loftin* was whether to transfer the
case from the District of Alaska to the District of Washington
where the accident giving rise to the cause of action occurred
outside Alaska; the majority of witnesses were from outside
Alaska; all parties were non-residents of Alaska; there was
greater ease of access to sources of proof (including medical and
employment records) in Washington; there was greater availability
of compulsory process in Washington; and the cost of obtaining
attendance of willing witnesses was lower in Washington.  *Id*. at
*6.  In *Loftin*, the balance of all the factors weighed heavily in
favor of transfer from Alaska to Washington State.  That is not
the case here.

The burden is on the moving party to show that the balance
of factors strongly favors transfer.  *Gallo*, at 467; *Decker Coal*,
805 F.2d at 843.  If the balance of factors is only slightly in
favor of transfer, or if the balance is more or less equal, and
would only shift the burden of inconvenience to the parties and
witnesses, then transfer should not be allowed.  *Decker*, 805 F.2d

at 843; *see also In re Nat'l Presto*, 347 F.3d at  663-4

("[U]nless the balance [of factors] is strongly in favor of the

defendant, the plaintiff's choice of forum should rarely be

disturbed.") (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501,

508 (1947)).  It is not an abuse of discretion for the district

court to deny a motion to transfer when inconvenience would

merely be shifted, rather than eliminated.  *Decker Coal*, 805 F.2d

at 843.

While both the Eastern District of California and the

District of Utah are technically the proper venue for this case,

Defendants have failed to meet their burden to show that the

balance of factors clearly weighs in favor of transfer.  *Savage*,

611 F.2d at 279; *see also Mincy v. Detroit & Cleveland Nav. Co.*,

96 F. Supp. 505, 505-6 (S.D.N.Y. 1950).

Here, the Defendants' corporate headquarters and principal

place of business is in California, and Joyce Helmbrecht, the

main witness regarding a variety of corporate issues (including

but not limited to alter ego issues, whether Defendants

adequately insured their employees, and maintenance and cure

issues), resides in California.  That Plaintiff resides and the

incident occurred in Utah weighs in favor of transfer.  That two

of the witnesses to the accident are Utah residents also weighs

in favor of transfer.  However, two of the witnesses to the

accident are non-Utah residents and a transfer would only mean a

shift in the burden of inconvenience, which would not serve the

purpose of transferring venue.  Also, Defendants have not made a

strong showing that the potential witnesses who reside in Utah

will actually offer live testimony.  The treating physicians can

provide deposition testimony in Utah.  The parties will likely hire medical experts to offer live testimony, and there was no showing that it would be more difficult or burdensome to hire medical experts in the Eastern District of California than in the District of Utah.  The primary evidence that the WCF claims adjusters, the USGS officials, or plaintiff's former employers are likely to offer are official business records or statistics, which are likely to be admissible without live testimony.  *See* Fed. R. Evid. 803(8) (public records exception).

Defendants argue that policy interests weigh in favor of Utah because among the disputed legal issues in this case are whether a Utah recreational boat operator has standing to sue under the Jones Act, and whether a particular section of the Colorado River, in Utah, is a "navigable waterway" under the Jones Act.  There was no discussion at oral argument whether law in the Ninth Circuit (where the Eastern District of California is located) regarding the Jones Act differs from law in the Tenth Circuit (where the District of Utah is located).  However, a federal court in Utah would be just as familiar with maritime law as a federal court in California and more familiar with the navigable waters of Utah.

The factors that most favor transfer are that the incident giving rise to this action occurred in Utah and that the issues to be decided involve Utah waterways.  These factors do not tip the balance in favor of transfer.  Inconvenience would result if this case were tried in either Utah or California.  Shifting the balance of inconvenience is not the purpose of venue transfers under § 1404(a).  Defendants have failed to meet their burden to

show that Utah is clearly a more convenient forum than California.

## V.   CONCLUSION

For all the foregoing reasons, Defendant's Motion to Transfer District Pursuant to 28 U.S.C. § 1404(a) is **DENIED**.

**SO ORDERED.**

**DATED:    May _23__, 2005.**

                                        **/s/ OLIVER W. WANGER**

                                        _____

                                              **Oliver W. Wanger**
                                        **UNITED STATES DISTRICT JUDGE**

33